**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **SUMMIT FINANCIAL RESOURCES L.P.,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**BIG DOG ENTERPRISES LOGISTICS,** )<br>**LLC, d/b/a FREIGHT HAULING** )<br>**LOGISTICS, DAVID HURSEY, THE** )<br>**HURSEY GROUP, LLC, and** )<br>**PEERLESS-PREMIER APPLIANCE** )<br>**CO.,** )<br>)<br>Defendants. )<br>_____ )<br>**PEERLESS PREMIER APPLIANCE** )<br>**CO.,** )<br>)<br>   Counterclaim/Interpleader Plaintiff, )<br>)<br>v. )<br>)<br>**SUMMIT FINANCIAL RESOURCES** )<br>**L.P.,** )<br>)<br>   Counterclaim/Interpleader Defendant. )<br>**PEERLESS PREMIER APPLIANCE** )<br>**CO.,** )<br>)<br>   Cross-claim/Interpleader Plaintiff, )<br>)<br>v. )<br>)<br>**BIG DOG ENTERPRISES LOGISTICS,** )<br>**LLC, d/b/a FREIGHT HAULING** )<br>**LOGISTICS, DAVID HURSEY, THE** )<br>**HURSEY GROUP, LLC,** )<br>)<br>And )<br>)<br>**CSX INTERMODAL, INC., ESTES** )<br>**EXPRESS LINES, FED EX FREIGHT-** ) | **Case No. 07-CV-0187-MJR-CJP**<br><br>**CONSOLIDATED WITH**<br><br>**Case No. 07-CV-0361-MJR-CJP** |

| | |
|---|---|
| **EAST, LANDSTAR RANGER,** | ) |
| **OVERNIGHT TRANSPORT-UPS** | ) |
| **FREIGHT, SCHNEIDER NATIONAL** | ) |
| **CARRIERS, and YELLOW** | ) |
| **TRANSPORTATION, INC.,** | ) |
| | ) |
| Cross-Claim/Interpleader Defendants. | ) |
| | ) |

## MEMORANDUM and ORDER

**REAGAN, District Judge**:

### A. Introduction and Background

On March 15, 2007, Summit Financial Resources filed the above-captioned action against Defendants Peerless-Premier Appliance Co., Big Dog Enterprises Logistics, The Hursey Group, LLC, and David Hursey (Doc. 2). On May 4, 2007, Peerless filed its Answer and initiated an interpleader action against "Overnight Transport-UPS Freight" and others (Doc. 24). In fact, it appears that Peerless intended to interplead "Overnite Transportation Co., Inc." and/or "UPS Freight."[1] Despite the misnomer, Peerless was able to serve Overnite's statutory agent with its interpleader action on May 15, 2007 (see Doc. 41).

On August 24, 2007, the Court granted Summit's motion for default judgment against several cross-claim interpleader defendants who had not yet answered, including Overnite (Doc. 126). On September 6, 2007, Summit sent a Notice of Entry of Default and a copy of the Court's Order to Overnite (See Doc. 130). On December 21, 2007, Overnite moved to vacate the default judgment (Doc. 175). The Court ordered any party objecting to Overnite's motion to respond by January 7, 2008, and Summit was the only party to file an objection (Doc. 181).

---

[1] Overnite Transportation Co., Inc. is a subsidiary of United Parcel Service, and Overnite's name has been changed to "UPS Freight."

Having fully considered the parties' filings, the Court now **GRANTS** Overnite's motion to vacate default judgment (Doc. 175).

### B. Analysis

**Federal Rule of Civil Procedure 60(b)(1)** provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ." The movant has the burden to prove that excusable neglect exists. ***Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994).** In order to prove excusable neglect, the movant must show "(1) 'good cause' for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint." *Id.*

### 1. Good Cause

Overnite argues that good cause exists here because it has a system in place to safeguard against default judgments. In spite of this system, however, Overnite states that its failure to timely answer was due to the fact that the action named "Overnight" as a party rather than "Overnite." Additionally, Overnite is a subsidiary of UPS and argues that UPS has an internal system in place to prevent the entry of default judgment and that its failure to answer "was the product of isolated human error" because the legal documents were misplaced. In order to verify these facts, Overnite has submitted an affidavit from Burt Mallinger, Litigation Counsel for UPS Freight (Doc. 178-2). Additionally, Overnite points to cases in other circuits finding that similar factual circumstances have been found to constitute good cause for the purposes of an excusable neglect analysis. *See **Owens-Illinois, Inc. v. T&N Ltd.*, 191 F.R.D. 522 (E.D. Tex. 2000).**

First, the Court finds Overnite's argument that Peerless misspelled its name in the caption insufficient for a showing of good cause. Overnite admits that though there are many other carriers with a similar name, its statutory agent was served with process and that it had possession of the documents. Moreover, the caption names "Overnight Transport-UPS Freight," and Overnite does not allege that any other similarly named party is affiliated with UPS Freight. Finally, Overnite does not state that its failure to respond to the complaint was caused by the misnomer, or that it was confused as to its involvement in the action. Rather, Overnite alleges that it failed to respond because the documents were misplaced. Therefore, the misnomer is not a sufficient excuse to make a proper showing of good cause.

However, the fact that Overnite maintains a system of procedural safeguards to prevent default judgment but failed to respond because of an isolated human error does indicate good cause. *See Owens-Illinois, Inc. v. T&N Ltd.*, **191 F.R.D. 522 (E.D. Tex. 2000).** According to Overnite's motion and the accompanying affidavit, UPS has an intake office to receive and distribute legal documents. Though the complaint was apparently received, Overnite claims that it was lost at some point in the intake process.

The Court recognizes that no system is perfect, and it appears that UPS's system is reliable given the large number of legal actions it properly handles each year. Having reviewed Overnite's motion and supporting affidavit, the Court finds that Overnite's internal procedures are adequate and reliable and that its failure to answer the complaint was the product of isolated human error. Though it is not entirely clear at which juncture the system failed in this particular case, the facts indicate that the default judgment against Overnite was the result of excusable neglect. Consequently, the Court is satisfied that Overnite has shown good cause for its default.

## 2. The Existence of a Meritorious Defense

The Court is also satisfied that Overnite may have a meritorious claim to the interpleader stake. Overnite states that Peerless and/or Big Dog owe payment on outstanding accounts totaling approximately $75,000. If the Court does not vacate the default judgment, Overnite would lose its claim to the stake. Consequently, the Court finds that Overnite has established that it has a claim to the stake in this case.

## 3. Quick Action to Vacate

Finally, Overnite acted quickly to vacate default judgment in light of the current discovery and trial schedule and the potential prejudice to the parties. **Rule 60(c)** states that "[a] motion under Rule 60(b) must be made within a reasonable time—and . . . not more than a year after the entry of the judgment or order." However, this one-year deadline is an "extreme outer limit," and "even a motion filed within a year will be rejected as untimely if not made within a reasonable time." ***Berwick Grain Co. v. Illinois Dept. of Agric.*, 189 F.3d 556, 560 (7th Cir. 1999) (citations omitted).** Additionally, the Seventh Circuit has noted, "Quick action to attack a default judgment is required because the cement of finality hardens each and every day beyond the entry of the judgment; the winning party increasingly fashions its expectations and affairs on having and holding the judgment as time passes." ***Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994).**

In determining whether Overnite acted quickly to vacate the default judgment, the Court considers all relevant facts including "the reason for delay, the practical ability of the litigant to have learned about the grounds of the judgment earlier, and the degree of prejudice to the other parties." ***Thomas v. Exxon Mobil Oil Corp.*, 2007 WL 2274710, \*3 (N.D.Ill. Aug. 1,**

2007) (unpublished) (quoting *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986)).

Here, Overnite was served with the interpleader action on May 15, 2007 and default judgment was entered on August 24, 2007. On September 6, 2007, Summit sent a Notice of Entry of Default and a copy of the Court's Order to Overnite. Overnite apparently received prompt notice of the default, and moved to vacate the judgment on December 21, 2007, just over three months after Summit sent the notice. During the interim, Overnite states this it

> analyzed whether it would be cost efficient to attempt collection of the Peerless debt, reviewed and analyzed its internal procedures, confirmed the amount of money due and owing to it for the freight charges and services performed by Overnite, contacted outside counsel, retained local counsel to handle the matter, and drafted and filed the Motion to Vacate . . . .

(Doc. 178, p. 8). Though the Court is not entirely convinced that these activities provide full justification for Overnite's delay,[2] the Court prefers a decision on the merits rather than procedural default where the objecting parties will suffer little or no prejudice if the Court vacates the default judgment.

Summit and the other interpleader parties would suffer little or no prejudice from a Court Order vacating default judgment against Overnite. In the parties' filings, Summit argues that Overnite filed the instant motion less than one month prior to the deadline for completing fact discovery on the interpleader claims, which was originally set for January 15, 2008 (Doc. 124-2, ¶ 2(a)).

---

[2] For instance, Yellow Transportation (Yellow) was similarly situated to Overnite, yet promptly moved to vacate default judgment. The Court granted default judgment against both Yellow and Overnite in the same August 24, 2007 Order. However, Yellow was apparently analyze its litigation position and promptly move to vacate default judgment by October 4, 2007, less than one month after receiving Summit's September 6, 2007 notice of default (See Doc. 147).

While Summit's position may have been persuasive at the time its response was filed, the discovery schedule and trial date were recently extended at Summit's request (See Docs. 208 & 221). On February 29, 2008, Summit moved to vacate certain portions of the Scheduling and Discovery Order and to vacate the trial date (See Doc. 208). Though Summit only requested that dates relating to the "Summit claims" be moved (as opposed to dates pertaining to the interpleader claims), the Court noted that it "previously declined to bifurcate the claims . . . and [would] not permit plaintiff to achieve bifurcation by moving to continue only as to some of the claims" (Doc. 221). Consequently, the trial date and all discovery deadlines have been extended, including those related only to the interpleader claims.

As a result, vacating the default judgment against Summit will result in little or no prejudice to the interpleader parties. Given the current schedule in this case, the Court finds that Overnite's action was sufficiently prompt to warrant vacating the default judgment.

### C. Conclusion

For all the reasons stated above, the Court hereby **FINDS** that Overnite Transportation/UPS Freight's failure to answer was the product of excusable neglect, **GRANTS** Overnite's motion to vacate default judgment (Doc. 175), and **VACATES** the default judgment as to Overnite Transportation/UPS Freight (Doc. 126). Finally, the Court **ORDERS** Overnite Transportation/UPS Freight to file its answer in this case by March 25, 2008.

**IT IS SO ORDERED.**

**DATED this 12th day of March 2008.**

<u>s/ Michael J. Reagan</u>
**MICHAEL J. REAGAN**
**United States District Judge**